# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLANCHE A. BROWN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-1551 |
| UNITED STATES, <u>ET</u> <u>AL.</u>. | : | |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                        February 6, 2018

## <u>MEMORANDUM OPINION</u>

Plaintiff Blanche Brown, proceeding *pro se*, brings the current Federal Tort Claims Act ("FTCA") action against the United States, Coatesville Veterans' Administration Medical Center ("Coatesville VAMC"), and administrators of the Region 4 Veterans Integrated Services Network. Her claims arise out of the allegedly negligent acts and omissions of the Coatesville VAMC administrators in not supervising and discharging a VA employee, who was known to be chronically violent and who repeatedly harassed Plaintiff. Defendant moves to dismiss the Complaint both for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. In response, Plaintiff has filed a Counter-Motion for Summary Judgment.

For the reasons that follow, I will grant Defendants' Motion to Dismiss in part and deny it in part, and will deny Plaintiff's Motion for Summary Judgment in its entirety.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

The following facts are taken from Plaintiff's Complaint:[1]

---

[1]    When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211

In early 2011, Plaintiff enrolled in the Veteran's Assistance ("VA") Health Program as a cardiac patient, and was assigned to the Coatesville VAMC for her primary medical care. (Compl. p. 8.)

Plaintiff's brother, James ("JAB"), worked as a groundskeeper at Coatesville VAMC and was allegedly involved in workplace violence, in late 2012, which resulted in federal criminal charges. Following this incident, JAB phoned Plaintiff more than 250 times during work hours from January to March 2014 to complain to her about his supervisors, management, co-workers, and union representatives. Because Plaintiff was home recuperating from open heart surgery, she became a captive sounding board for JAB. (Id.)

In early 2014, JAB assaulted VA Registered Nurse R. Solomon and threatened to kill her. Solomon filed a Protection from Abuse action against JAB, causing him to turn his rage on Plaintiff. When Plaintiff asked JAB to stop contacting her, JAB used Solomon's personal email account to send Plaintiff a credible, threatening, and profane e-mail. In mid-April 2014, following Plaintiff's complaint to the police, JAB stated "If I go back to work tomorrow and hear that [Plaintiff] has contacted VA, then there's gonna be trouble." Plaintiff contacted the VA and reported the threats. The next day, she was taken by ambulance to the hospital for stress-induced high blood pressure. (Id. at pp. 8–9.)

After Plaintiff contacted the VA and filed her own Protection from Abuse petition against JAB, his harassment escalated into threats and attempts on her life. On April 25, 2014, JAB made a pre-dawn visit to Plaintiff's home after she refused to drop the Protection from Abuse order. He cut her phone line and discharged his 22-caliber firearm outside her window. (Id. at p. 9.)

---

(3d Cir. 2009). Thus, my recitation of the facts assumes the truth of the factual statements in the Complaint.

In May 2014, while Plaintiff was on her way to her primary care appointment at Coatesville VAMC, JAB drove up to her in the VAMC parking lot. He used his car to block Plaintiff's entrance to the VA police station, glared at her, and then drove off. (Id.)

Months later, in August 2014, Nurse Solomon, sent Plaintiff an email with JAB's bogus EEOC files attached. Out of fear that Plaintiff "could somehow derail his (bogus) EEOC claim by forwarding his files to his employer," JAB returned to Plaintiff's home with a loaded firearm. (Id. at pp. 9–10.)

In December 2014, JAB resumed his stalking campaign, made false reports to the state and local police that Plaintiff was a dangerous and "mentally disturbed veteran," and attempted to have her involuntarily committed. (Id. at p. 11.)

Plaintiff claims that Coatesville VAMC had known for decades about JAB's physical abuse of women employees, and it fostered a culture of hostility towards veterans, particularly women and minorities. Plaintiff had warned the VA about JAB's threats against the workplace and supervisors, but supervisors did not take her seriously. According to the Complaint, VA administrators actually reported Plaintiff's alerts back to JAB without any regard for Plaintiff's welfare. (Id. at pp. 10–11.)

Plaintiff also alleges that Coatesville VAMC's managers, human resources, administrators, and other decision makers had just cause to terminate JAB's employment in 2007 and 2012. Coatesville VAMC police knew that, in 2010, another female employee filed a formal complaint with the VA police because JAB sent her repeated unsolicited texts and began stalking her. The VA police, however, repeatedly failed to investigate. (Id.)

Plaintiff's primary care provider and other administrators were similarly dismissive when Plaintiff reported JAB's intimidation and vandalism of her home. Coatesville VAMC staff was condescending and patronizing, treating Plaintiff as though she was delusional. (Id.) As a result

of the continuing dangers, Plaintiff transferred her medical care away from Coatesville, disrupting her treatment.  (Id. at pp. 11–12.)

In December 2015, Plaintiff filed an FTCA administrative claim, along with documentation of JAB's threats of violence and vandalism.  VA Chief Counsel George Burns subsequently sent Plaintiff a letter indicating that the VA found no evidence of negligence of misconduct.  Plaintiff filed a request for reconsideration and, sometime after November 3, 2016, she received a final determination letter from Director Michael Adelman, dismissing her claim. (Id. at p. 12.)

Plaintiff initiated the current federal litigation under the FTCA on April 5, 2017.  Her complaint sets forth numerous causes of action, including:  negligence/gross negligence (Count I); negligent retention (Count II), negligence per se (Count III), privacy violation (Count IV), negligent hiring, retention, and supervision (Count V), failure to protect and prevent abuse (Count VI), patient abuse (Count VII), failure to report abuse (Count VIII), patient abandonment (Count IX), harassment, intimidation, and retaliation (Count X), discrimination (Count XI), negligent infliction of extreme mental distress (Count XII), negligent investigation (Count XIII), intentional infliction of mental distress (Count XIV), and punitive damages (Count XV).

On August 11, 2017, Defendant filed a Motion to Dismiss.  Plaintiff responded on October 12, 2017, and filed a Counter-motion for Summary Judgment.

### DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the entire Complaint for both lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  I address each portion of the motion separately.

## I.      Subject-Matter Jurisdiction

### A.      Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case.  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).  When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist."  Id. at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction.  Mortensen, 549 F.2d at 891.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id. With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence.  Petruska, 462 F.3d at 302 n.3; see also Gould Elecs., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Petruska, 462 F.3d at 302 n.3 (quoting Mortenson, 549 F.2d at 891).

### B.      Discussion

The United States maintains sovereign immunity from suit, except to the extent that it consents to being sued.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994).  The Federal Tort Claims Act constitutes one such waiver of the federal government's sovereign immunity with respect to tort claims for money damages.  See 28 U.S.C. § 1346(b)(1).  Under the FTCA, the United States

5

may be liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(l). A plaintiff "bears the burden of demonstrating that his claims fall within the scope of the FTCA's waiver of government immunity." Merando v. U.S., 517 F.3d 161, 164 (3d Cir. 2008).

Defendants assert that most, if not all, of Plaintiff's claims do not fall within the scope of the FTCA's waiver of immunity, thereby depriving the Court of subject-matter jurisdiction. They premise this argument on three grounds: (1) the discretionary function exception to the Federal Tort Claims; (2) the failure to meet the scope of employment provision of the FTCA; and (3) failure to exhaust.[2]

1.   <u>Discretionary Function Exception</u>

The well-established "discretionary function exception" of the FTCA limits the FTCA's waiver of sovereign immunity by "eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the government." Baer v. U.S., 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 2680(a)). Under this exception, the government retains sovereign immunity with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. In this manner, the discretionary function exception draws a "boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. Varig Airlines, 467 U.S. 797, 808 (1984). Congress enacted the discretionary function exception

---

[2] Defendants also argue that the Court lacks jurisdiction over FTCA claims that involve certain intentional torts and claims concerning medical benefits. As I dismiss those claims on other jurisdictional grounds, I need not reach these arguments.

to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814.

Application of the discretionary function exception is analyzed under a two-part test. First, a court must "consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." Baer, 722 F.3d at 172 (citing Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Second, a court must determine whether the judgment exercised "is of the kind that the discretionary function exception was designed to shield." Id. (citing Berkovitz, 486 U.S. at 536). The discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." Id. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." United States v. Gaubert, 499 U.S. 315, 324 (1991). Notably, the government "has the burden of proving the applicability of the discretionary function exception." Merando, 517 F.3d at 164.

Pursuant to this legal framework, Defendants contend that multiple counts of the Complaint are barred by the discretionary function exception. I agree and will dismiss counts one, two, three, five, six, eight, and twelve on this basis.

          *a.*     *Negligent Hiring, Retention, Training, Discipline, and Supervision Claims*

Counts one, two, three, five, and twelve of the Complaint[3] allege that VA employees negligently hired, trained, retained, supervised, and failed to remove JAB and other employees.

---

[3] Count one asserts that Defendants had a duty to protect VA clients from known violent employees and that they breached this duty by failing to properly hire, train, and supervise JAB as an employee. Count two asserts that Defendants were aware that JAB was a chronically violent

Applying the two-step inquiry defined above, I find that the discretionary function exception deprives the Court of jurisdiction over these claims.

Federal appellate courts stand in agreement that decisions relating to the hiring, training, and supervision of employees are inherently a discretionary function.[4] Although the issue has not been explicitly addressed by the Third Circuit, numerous trial courts within the Third Circuit have reached the same conclusion.[5] Underlying these decisions is the notion that "employment and

---

employee, but were negligent in disciplining and retaining him as an employee. Count three sets forth a negligence per se claim, asserting that Defendants' decision to retain JAB violated their duties under the VA Handbook 5021. Count five alleges negligent hiring, training, and supervision as to employees Nurse Solomon, Coatesville VAMC managers, and final decision makers. Count twelve asserts that Defendants committed negligent infliction of emotional distress on Plaintiff by negligently retaining a dangerous employee whose violence should have been foreseeable.

[4]  See, e.g., Snyder v. U.S., 590 F. App'x 505, 510 (6th Cir. 2014) (holding that agency hiring, supervision, training, and retention generally fall within discretionary function exception); Guile v. U.S., 422 F.3d 221, 231 (5th Cir. 2005) (holding that hiring of a contractor and supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function); Vickers v. U.S., 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[D]ecisions concerning the hiring, training, and supervision of WMATA employees are discretionary in nature, and thus immune from judicial review."); Tonelli v. U.S., 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); Richman v. Straley, 48 F.3d 1139, 1146–47 (10th Cir. 1995) ("Decisions regarding employment and termination are inherently discretionary . . . . Such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing.") (citation omitted); Attallah v. U.S., 955 F.2d 776, 785 (1st Cir. 1992) ("[T]he supervisory functions of [a government agency] constitute discretionary functions as defined by 28 U.S.C. § 2680(a).").

[5]  See, e.g., Amberg-Blyskal v. Transp. Sec. Admin., No. 10-6816, 2011 WL 4470883, at *2 (E.D. Pa. Sept. 26, 2011) (holding that hiring and supervising decisions are the types of discretionary acts susceptible to policy analysis); Woods v. United States, No. 07–593, 2007 WL 3243852, at *5 (D.N.J. Nov. 1, 2007) (holding that hiring and supervision of agency personnel is discretionary); CAC v. U.S., 09-6057, 2010 WL 5239237, at *3 (D.N.J. Dec. 16, 2010) (holding that the failure to discipline employee for wrongful acts and the reassignment of that employee to

termination decisions are, as a class, the kind of matters requiring consideration of a wide range of policy factors, including 'budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition.'" Sydnes v. U.S., 523 F.3d 1179, 1186 (10th Cir. 2008) (quoting Burkhart, 112 F.3d at 1217).

Consistent with this principle, cases involving allegations of negligent hiring, supervision, and retention against the VA have generally found that—absent a policy mandating specific supervision, retention, or hiring procedures—such claims fall within in the discretionary function exception to the FTCA's waiver of liability absent a policy that expressly mandates specific supervisory, retention, or hiring practices. See Anasazi v. U.S., No. 16-2227, 2017 WL 2264441 (D. Kan. May 23, 2017) (finding that negligent hiring and retention claims were within exception where no policy, Handbook, or Directive mandated specific hiring or employment retention decisions); French v. U.S., 195 F. Supp. 3d 947, 954 (N.D. Ohio 2016) (holding that the VA's conduct in hiring, retaining, entrusting, training, and supervising a chaplain and other members of the VA team "fall squarely within the discretionary function exception."); Gibbons v. Fronton, 533 F. Supp. 2d 449, 456 (S.D.N.Y. 2008) (finding that decision by VA to contract with clinic for the provision of primary and preventative care in veterans' local communities was within discretion granted to VA by statute and, therefore, barred negligent hiring and supervision claims by plaintiff patient).[6]

_____

a new location with knowledge of his wrongful conduct is within the discretionary function exception).

[6] Plaintiff cites two Third Circuit cases—Cestonaro v. United States, 211 F.3d 749 (3d Cir. 2009) and Gotha v. United States, 115 F.3d 176 (3d Cir. 1997)—for the proposition that "when a governmental actor has reason to know about a specific risk of injury or harm but does nothing to remedy the danger, then future harm by the same known source of danger renders the discretionary function exception inapplicable and does NOT bar a negligence claim." (Pl.'s Opp'n Mot. to Dismiss p. 15.)

The crux of the discretionary function analysis in this case thus turns on whether Plaintiff can identify statutes and/or regulations that limited the discretion of the VA in its hiring, retention, or supervision decisions of employees such as JAB.  None of the regulations identified by Plaintiff meet this standard.

First, Plaintiff cites to Pennsylvania state common law, which imposes a legal duty to avoid reckless or negligent behavior that will not expose others to risks of injury which are reasonably foreseeable.  (Pl.'s Opp'n Mot. to Dismiss, p. 13–14.)  "To overcome the discretionary function exception . . .  plaintiffs must show that the federal employee's discretion was limited by a *federal* statute, regulation, or policy."  <u>Sydnes v. United States</u>, 523 F.3d 1179, 1184 (10th Cir. 2008) (emphasis in original) (quotation omitted).  States cannot waive the federal government's immunity and, therefore, a plaintiff must point to a federal policy incorporating state tort law as a limit on the discretion of federal employees.  <u>Id.</u>

Alternatively, Plaintiff points to VHA Directive 5025, "38 C.F.R. 0.735,[7] 5 U.S.C. § 7511 [and] 5 C.F.R. § 752.401(c)," which purportedly set out mandatory standards of employee conduct, as well as the standard course of action and procedures for adverse actions against violent employees.  A review of these citations, however, reveals that Defendants retain discretion in their employment decisions.  For example, 5 U.S.C. § 7513 and 5 C.F.R. § 752.401 are general provisions that prescribe certain procedures a federal agency must follow before taking a serious adverse action against administrative personnel; they do not dictate when an employee must be

_____

Both of those cases are inapposite as they involved "garden variety" decisions where the government agencies failed to physically maintain their properties, resulting in physical injuries to the plaintiffs.  In both situations, the court found that the failure to act was a result of administrative missteps as opposed to a policy-based decision.  <u>Cestanaro</u>, 211 F.3d at 755; <u>Gotha</u>, 115 F.3d at 181. By contrast, this case involves hiring and retention decisions that have been found to fall squarely within the discretionary function exception.

[7]  This provision does not exist in the Code of Federal Regulations.

disciplined.  Similarly, 38 U.S.C. § 7461, <u>et seq.</u>, which applies specifically to VA employees, defines the procedures that the VA has to follow when taking adverse actions against employees without dictating the circumstances under which any adverse actions must be taken.

Finally, Plaintiff relies heavily on VHA Policy Handbook 5021, which enumerates appropriate punishments for various offenses by VA employees.  The Handbook, however, does not constrain the judgment of VA supervisors to make employment decisions or impose discipline.  Rather, it rests on "[t]he policy of the VA to maintain standards of conduct and efficiency that will promote the best interests of the service."  Handbook 5021, Ch. 1.  Indeed, contrary to Plaintiff's argument that the "Schedule of Offenses and Penalties" in the Handbook is mandatory and prescribes minimum penalties for certain offenses, Appendix A to the Schedule of Offenses states that "[t]his appendix will be used as a <u>guide</u> in the administration of disciplinary and major adverse actions to help ensure that like actions are taken for like offenses."  (Handbook, Part I, App'x A (emphasis in original).)  Moreover, the Handbook provides that the responsible official that has initiated an action should consider "[a]ny extenuating or mitigating circumstances or other contributing factors which may have some bearing on the situation."  VA Handbook 5021, Part I, Ch. 1, at I-8.  In short, Plaintiff identifies no policy or regulation that cabins the discretion of VA employees in making hiring, supervision, training, or retention decisions and leaves them "no rightful option but to adhere to the directive."[8]  <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988).

---

[8]  Citing to <u>Woods v. U.S.</u>, 2007 WL 3243852,  Plaintiff argues that the discretionary function exception applies to only agency-level administrative and legislative acts that are related to and impact public policy.  <u>Woods</u> actually contradicts that argument as it found that decisions by individual FBI agents regarding how to select and supervise an informant, whether to investigate an act, and whether to use an undercover operation are all decisions that fall within the discretionary function exception.  <u>Id.</u> at *5; <u>see also</u> <u>Newsham v. Transp. Sec. Admin.</u>, No. 08-105, 2010 WL 715838, at *9 (D.N.J. Feb. 26, 2010) ("The discretionary function exception is not limited to those agencies and heads of agencies who make choices based in policy concerns.  The

With respect to the second prong of the discretionary function analysis—whether the judgment is of the kind the discretionary function was designed to shield—I find that the acts at issue in these counts are policy-based in nature. As set forth above, Handbook 5021 specifically allows for the use of discretion in imposing discipline on an employee and sets forth various factors that the supervisor should consider when determining what penalty to impose. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324.

Accordingly, I will dismiss counts one, two, three, and five for lack of subject-matter jurisdiction.

> b. *Claims that the VA Negligently Investigated Plaintiff's Complaints and that Employees Failed to Report Abuse and Protect Plaintiff from Abuse*

Counts six and eight[9] of the Complaint allege that VA employees disregarded and failed to report abuse by JAB against Plaintiff, and count thirteen[10] contends that the VA supervisors failed to investigate complaints of JAB's abuse.

---

exception also extends to shield the actions of employees who act within the scope of that policy.").

[9]    Count six alleges that "by repeatedly disregarding management's Proposals for Removing violent CVAMC Employee JAB from federal employment (or at least transfer him to a different VA facility), Defendants gave JAB the clear message that he is untouchable and cannot be fired." Count eight asserts that  JAB's brother, AWB, who was also a VA employee, knew of threats made by JAB towards Plaintiff, but failed to report JAB's patient abuse to VA authorities.  In addition, Count 8 contends that Nurse Solomon also failed to report both JAB's threatening email to Plaintiff that was sent from her account and JAB's threat against Plaintiff, made in her presence, to his brother AWB.

[10]    Count thirteen contends that "Defendants at VISM 4 Regional Headquarters (Carla Sivek and Michael Adelman) had a duty to fully and fairly investigate Complaints before and following her Administrative Claim," but breached that duty.

Under the first element of the discretionary function test, the Third Circuit has held that "[d]ecision making as to investigation and enforcement, particularly where there are different types of enforcement action[s] available, are discretionary judgments." Bernitsky v. U.S., 620 F.2d 948, 955 (3d Cir. 1980); see also Donaldson v. U.S., 281 F. App'x 75, 77 (3d Cir. 2008). This rule applies equally to administrative agency decisions regarding whether to bring enforcement actions. Green v. U.S., No. 94-5706, 1995 WL 574495, at *6 (E.D. Pa. Sept. 22, 1995) (holding that prison officials' decision as to whether to issue an incident report against an inmate based on another inmate's complaint "clearly falls within the discretionary function exception"). "With respect to conduct on VA property . . . the VA is entitled to the range of discretion properly accorded other law enforcement agencies." Pooler v. U.S., 609 F. Supp. 198, 203 (E.D. Pa. 1985), aff'd, 787 F.2d 868 (3d Cir. 1986); see also French v. U.S., 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016) (VA's delay in investigating alleged abuse by VA chaplain is a question that involves an element of judgment and, thus, falls within the discretionary function exception).

Under the second element, the decision of the VA employees as to whether to report threats by another employee outside the workplace or whether to investigate any such reports is one susceptible to policy analysis. See Ochran v. U.S., 117 F.3d 495, 501 (11th Cir. 1997) ("[I]t is not relevant whether the government employee in fact made a policy judgment in this case . . . . The inquiry is whether the nature of the conduct at issue is 'susceptible to policy analysis.'"). Among the factors that an employee or supervisor would have to consider are the nature of the threat, whether it is credible, and whether it implicates workplace safety.

Plaintiff has not identified any statute, regulation, or policy that mandated specific action either by VA employees in reporting the alleged abuse by JAB that occurred off VA premises, or by VA supervisors in failing to investigate Plaintiff's administrative complaints about JAB.

Although Plaintiff cursorily references the VA's "Medical Center Policy on Workplace Violence Prevention and Intervention," she offers no explanation about how this policy circumscribed the VA's investigative discretion. Indeed, a review of this policy reveals no explicit requirement regarding how or when VA staff conduct any investigation. Therefore, I will dismiss counts six, eight, and thirteen of the Complaint for lack of subject matter jurisdiction.

### 2. Claims Involving Acts by Employees Committed Outside the Scope of Their Employment

Defendants' second jurisdictional argument asserts that all but two of Plaintiff's remaining claims[11] do not satisfy the "scope of employment" element of the FTCA's waiver provision. Specifically, Defendants contend that these claims all involve JAB's alleged threatening actions, which were done outside the scope of his employment.

The FTCA waives the government's immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting *within the scope of his office or employment*." 28 U.S.C. § 1346(b)(l) (emphasis added). The explicit language of this provision mandates that, for the waiver of immunity to apply, the act complained of must have been done within the scope of the offending individual's employment. Id. In the Third Circuit, the scope-of-employment requirement in the FTCA is jurisdictional. CNA v. U.S., 535 F.3d 132, 144 (3d Cir. 2008). The court must, however, take care not to resolve the merits of the action and therefore should require less of a factual showing from plaintiff than would be required at trial. Id.

To determine whether the "scope of employment" provision has been satisfied, a court must look to the law of the place where the act or omission occurred, which, in this case, is Pennsylvania. Id. at 146. Pennsylvania has adopted the Restatement (Second) of Agency's

---

[11] Plaintiffs do not challenge counts four and eleven on this ground.

definition of conduct within the scope of employment.  Id.  Under this definition, "'conduct is within the scope of employment if, but only if:  (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits[; and] (c) it is actuated, at least in part, by a purpose to serve the master.'"  Id. (quoting Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) of Agency § 228)).  For an individual's actions to be within the scope of employment, all three factors must be satisfied. CNA, 535 F.3d at 147.

Here, even taking the allegations of the Complaint as true, it is undisputed that all of the acts that make up the basis for Counts seven, nine, ten, and fifteen occurred either outside the time and space limitations of the offending individuals' employment with the VA, or were not committed on behalf of or with the authorization of the VA.

For example, count seven for "patient abuse" alleges that Nurse Solomon (1) allowed JAB to send a violent, threatening email to Plaintiff from her personal email account; (2) helped JAB retaliate against Plaintiff for reporting his abuse to the Patient Advocate; and (3) recklessly emailed Plaintiff a copy of JAB's bogus EEOC file without warning her that JAB would attempt to stop Plaintiff from forwarding the email to either the VA Police or CVAMC administrators. The Complaint contains no allegations that any of these events took place during work hours at the VA, on the VA premises, or using a VA work email.  Moreover, the allegations of the Complaint, taken as true, do not permit an inference either that these actions by Nurse Solomon were the kind that she was employed to perform or that they were actuated in any part with intent to serve the VA.  Quite to the contrary, the Complaint expressly alleges that Solomon acted for purposes of either personally retaliating against JAB or helping JAB retaliate against Plaintiff.

Count nine alleges "patient abandonment,"[12] claiming that "[a]s a result of the harassment, intimidation, threats and stalking, Plaintiff was forced to stop receiving her primary care treatment and other medical treatment at Coatesville VA Medical Center." (Compl. p. 17.) Plaintiff explicitly alleges that almost all of the alleged harassment, intimidation, threats, and stalking occurred off the VA premises. Plaintiff specifically states that JAB called her *at home* more than 250 times to complain about VA officials. In addition, JAB allegedly twice-threatened Plaintiff with a firearm at her home and sent her a threatening e-mail from Solomon's personal e-mail address. See Doughty v. U.S. Postal Serv., 359 F. Supp. 2d 361, 366 (D.N.J. 2005) (holding that postal worker was acting outside scope of employment when he visited fellow postal employee during non-working hours, at her home, using a pretext that had nothing to do with his employment, and allegedly assaulted her). The only act that occurred on VA premises involved JAB driving his vehicle up to Plaintiff while she was on Coatesville VA property to see her primary care physician. The evidence reveals, however, that JAB was off duty from work on the relevant day and he immediately drove away after the incident. (Defs.' Mot. to Dismiss, Exs. 1 & 2.) The Complaint permits no plausible inference that any of these acts were taken in the scope of JAB's employment as groundskeeper or were designed to fulfill his employment duties.

_____

[12] To the extent Plaintiff alleges in this Count that she was deprived of medical care to which she was entitled, this Court has no jurisdiction over this claim. 38 U.S.C. § 511(a) states that the Secretary of Veterans Affairs:

> shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans.... Subject to subsection (b), *the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court,* whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a) (emphasis added). Section 511(a) specifically "precludes judicial review in Article III courts of VA decisions affecting the provision of veterans' benefits." Price v. United States, 228 F.3d 420, 421 (D.C. Cir. 2000).

Count ten alleges harassment, intimidation, and retaliation by JAB, Solomon, and JAB's brother AWB, all of whom were VA employees. For the reasons set forth above, the actions by JAB and Solomon cannot be deemed to be within the scope of employment. As to AWB, Plaintiff alleges only that he worked in the VA Patient Records Office and that he relayed several threatening messages from JAB to Plaintiff. No facts allow any inference that AWB relayed these messages in the course of his employment with the VA.

Finally, count fourteen repeats the allegations of count ten under the guise of an intentional infliction of mental distress claim. For the same reasons set forth above, these actions were not within the scope of the individuals' employment.

In short, Plaintiff incorrectly assumes that because JAB, Solomon, and AWB were employed by Coatesville VA during the relevant time period, all of their actions with respect to Plaintiff were done within the scope of their employment. Without some showing that these actions were the kind these individuals were employed to perform, occurred substantially within the authorized time and space limits, and were actuated at least in part by a purpose to serve the master, Plaintiff cannot plausibly allege that they fell within the waiver of immunity provision of § 1346(b)(1). Accordingly, I will dismiss counts seven, nine, ten, and fourteen for lack of subject-matter jurisdiction.

### 3.     Failure to Exhaust

Defendants' last jurisdictional argument contends that Plaintiff failed to exhaust her administrative remedies as to count eleven.

The FTCA expressly provides that "[a]n action shall not be instituted upon a claim against the United States" for damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing. . . ." 28 U.S.C. § 2675(a). "Although an administrative claim need not propound every possible

theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." Roma v. U.S., 344 F.3d 352, 362 (3d Cir. 2003) (quotation omitted). Given the strict construction of the limited waiver of sovereign immunity by the United States, the Third Circuit has held that "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Id.

In count eleven, Plaintiff contends that VA employees JAB, Solomon, and AWB targeted her as a disabled, woman veteran, and portrayed her as a psychiatric patient, even though she was a cardiac patient, with the intent of perpetuating negative stereotypes and having her involuntarily committed. (Compl. p. 18.) As a result, Plaintiff's primary care provider, Dr. Cooper, treated her as though she was delusional and dismissed her reports about vandalism, harassing, and stalking. (Id.) In addition, when she asked the Coatsville VAMC to help her get admitted to the Wilmington VAMC, the Coatesville staff insisted that they were only willing to admit her to the psychiatric ward. (Id.)

Neither this claim nor its underlying facts appear anywhere in Plaintiff's administrative complaint. Plaintiff limited her administrative claims to negligent infliction of emotional anguish/mental stress; negligent application of VHA Directive 2010-053, 38 C.F.R. 17.07; negligent omission of threat assessment; negligent retention of dangerous employee; patient abuse; negligent actions which encouraged known violent employee to dehumanize and stalk women veterans; and Health Insurance Portability & Accountability Act and Privacy Act violations. (Compl., Ex. 1, exh. A.) At no point did Plaintiff discuss discriminatory treatment by Dr. Cooper or mention the refusal to assist her admission to the Wilmington VAMC.

As Plaintiff has failed to exhaust this claim, and as the exhaustion requirement is jurisdictional, I must dismiss this claim for lack of subject matter jurisdiction.

## II.  Failure to State a Claim

### A.  Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  <u>Id.</u>

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  <u>Bistrian v. Levi</u>, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  <u>Id.</u> at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." <u>Id.</u>  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

## B.    Discussion

Having found no subject-matter jurisdiction over thirteen of Plaintiff's fifteen causes of action, only counts four and fifteen remain.  I now turn to the merits of these counts to address whether Plaintiff has properly stated a claim under Federal Rule of Civil Procedure 12(b)(6).

### 1.    Privacy Violation

Count four of the Complaint alleges that

> At all times relevant in 2014 VA Employee AWB (JAB['s] brother) was an employee in Coatesville VAMC's PATIENT RECORDS OFFICE.  Defendant employer is liable for [AWB]'s HIPAA violations and the breaches of Plaintiff's privacy—which includes the un-authorized access and disclosure of Plaintiff's private health information to JAB—who disclosed and disseminated the information to 3rd parties for malicious reasons.  Among those reasons, was a malicious prosecution in a frivolous "Protection From Abuse" civil action.

(Compl. at p. 15.)

Pennsylvania law recognizes four torts under the umbrella of invasion of privacy: "[1] unreasonable intrusion upon the seclusion of another; [2] appropriation of another's name or likeness; [3] unreasonable publicity given to another's private life; and [4] publicity that unreasonably places the other in a false light before the public."  Boring v. Google Inc., 362 F. App'x 273, 278 (3d Cir. 2010) (quoting Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 376–77 (Pa. 2009) (citing Restatement (Second) of Torts §§ 652B–E (1977))).  As neither the second nor the fourth tort apply to the facts here, I will treat Plaintiff's claim as arising under either the first tort (intrusion upon seclusion) or the third tort (unreasonable publicity).

A claim for unreasonably publicity requires allegations of "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public."  Id. at 280 (quoting Harris by Harris v. Easton Publ'g. Co., 483 A.2d 1377, 1384 (Pa. Super. 1984) (citing Restatement (Second) of Torts § 652D))).  "The

element of 'publicity' requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Disclosure of information to only one person is insufficient." Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 378 (Pa. 2009) (quoting Harris, 483 A.2d at 1384).

In her Complaint, Plaintiff alleges that the sole recipient of Plaintiff's personal health information was JAB. As the element of publicity is not satisfied, this theory cannot survive.

A claim for intrusion upon seclusion, on the other hand, does not have an element of publication. See Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 621 (3d Cir. 1992). Rather, a plaintiff must allege conduct demonstrating "an intentional intrusion upon the seclusion of [a plaintiff's] private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." Boring, 362 F. App'x at 278–79 (quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002) (citations omitted). "[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." O'Donnell v. U.S., 891 F.2d 1079, 1083 (3d Cir. 1989).

Although Defendants argue that the Complaint fails to adequately plead that intrusion by AWB was intentional, their argument is misplaced at this stage of the litigation. Plaintiff plausibly alleges that the Coatesville VA had records containing personal health information, that its employee AWB had access to that health information, that the VA Privacy Policy directed that such information was to be kept confidential,[13] and that AWB, presumably acting within the scope

---

[13]  Pursuant to VHA Notice of Privacy Practices IB-10-163:

> The Department of Veterans Affairs' (VA) Veterans Health
> Administration (VHA) is required by law to maintain the privacy of

of his employment, intentionally disclosed it to his brother, who then used it for malicious purposes. Although the Complaint does not specifically address AWB's intention, it is a reasonable inference from the Complaint's allegations that AWB was substantially certain that he did not have the necessary legal or personal permission to disclose such information to JAB. Such allegations survive a motion to dismiss.[14]

### 2. Punitive Damages

In count fifteen of the Complaint, Plaintiff seeks punitive damages. The FTCA, however, specifically precludes such damages, stating:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674; see also Provolos v. FBI, 632 F. App'x 58, 59 n.1 (3d Cir. 2015) (holding that punitive damages are not authorized by the FTCA). Accordingly, I will dismiss this Count of the Complaint.

### C. Conclusion as to Defendants' Motion to Dismiss

In light of the foregoing, Plaintiff's claim for invasion of privacy (count four) survives as against the United States. I find, however, that the Court lacks subject matter jurisdiction over

---

> your protected health information and to provide you with notice of its legal duties and privacy practices. VHA is also required to abide by the terms of this Notice and its privacy policies.

Id.

[14] Plaintiff brings this claim against the United States, as well as Coatesville VA Medical Center, and administrators of the Region 4 Veterans Integrated Services Network, including human resources staff, program managers, and policy makers. (Compl. p. 1.) It is well established that "[t]he only proper defendant in an FTCA suit is the United States itself." Feaster v. Fed. Bureau of Prisons, 366 F. App'x 322, 323 (3d Cir. 2010). Neither the agency nor individual employees are proper defendants with respect to claims under the FTCA. See Travis v. Sniezek, No. 10-2653. 2012 WL 2389849, at *2 (M.D. Pa. May 8, 2012). Thus, to the extent count four has been brought against any Defendant other than the United States, that claim will be dismissed.

counts one to three and five to fourteen of the Complaint, and that Plaintiff may not pursue his count fifteen claim for punitive damages against the United States. Because amendment these claims would be futile, I will not grant leave to file an amended complaint.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has filed a counter-motion for summary judgment which presumably seeks a judgment in her favor on the entirety of her Complaint. As set forth in detail above, however, all of Plaintiff's claims—but for count four—must be dismissed. Although count four survives, Plaintiff has not demonstrated the absence of a genuine issue of material fact on this claim, which would entitle her to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Indeed, Plaintiff only surmises that AWB disclosed her personal health information to JAB, but offers no evidence to prove that AWB, while acting in the scope of his employment in the Patient Record Office, released the records.

## CONCLUSION

In light of the foregoing, I will deny Plaintiff's Motion for Summary Judgment and I will grant Defendants' Motion to Dismiss in part and deny it in part. An appropriate Order follows.