# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLANCHE A. BROWN, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 17-1551 |
| UNITED STATES, et al. : | |
| : | |
| Defendants. : | |

Goldberg, J.                                                                                                              February 21, 2019

## MEMORANDUM OPINION

Plaintiff Blanche Brown, proceeding *pro se*, brings the current Federal Tort Claims Act ("FTCA") action against the United States, Coatesville Veterans' Administration Medical Center ("Coatesville VAMC"), and administrators of the Region 4 Veterans Integrated Services Network, alleging negligence by the Coatesville VAMC administrators in not supervising and discharging a VA employee who repeatedly harassed Plaintiff.

On February 6, 2018, I dismissed all but one of Plaintiff's claims. Subsequent to that ruling, the litigation took a contentious turn, with Plaintiff refusing to come to Philadelphia for court conferences or depositions, repeatedly requesting recusal, and seeking sanctions against defense counsel. Following Plaintiff's second failure to appear for her deposition, Defendants filed the current Motion to Dismiss for Lack of Prosecution. For the reasons set forth below, the Motion will be granted and the remainder of Plaintiff's Complaint will be dismissed with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated the current action on April 5, 2017, alleging that she was a patient at the Coatesville VAMC and that her brother James ("JAB") worked as a groundskeeper there. Her

Complaint detailed multiple instances of JAB harassing Plaintiff at her home. Plaintiff claimed that Coatesville VAMC had known for decades about JAB's physical abuse of women employees, yet fostered a culture of hostility towards veterans, particularly women and minorities. According to Plaintiff, Coatesville VAMC's managers, human resources, administrators, and other decision makers failed to discipline JAB and/or terminate his employment. In light of Defendants' alleged actions, Plaintiff set forth claims for negligence/gross negligence (Count I); negligent retention (Count II), negligence per se (Count III), a privacy violation (Count IV), negligent hiring, retention, and supervision (Count V), failure to protect and prevent abuse (Count VI), patient abuse (Count VII), failure to report abuse (Count VIII), patient abandonment (Count IX), harassment, intimidation, and retaliation (Count X), discrimination (Count XI), negligent infliction of extreme mental distress (Count XII), negligent investigation (Count XIII), intentional infliction of mental distress (Count XIV), and punitive damages (Count XV).

Defendant filed a Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 6.) On February 6, 2018, I issued a Memorandum and Order dismissing all of Plaintiff's causes of action, except for her claim for invasion of privacy, for either lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted. (ECF Nos. 12–13.)

Thereafter, an in-person Rule 16 scheduling conference was set for March 22, 2018. (ECF No. 15.) Plaintiff's original request that the conference be conducted by telephone was denied and Plaintiff was ordered to appear. (ECF No. 23.) Due to inclement weather, the Rule 16 conference was rescheduled for March 23, 2018, to be conducted by telephone. (ECF No. 27.) Following that conference, I issued a scheduling order referring the case to United States Magistrate Judge Timothy Rice for settlement purposes, ordering fact discovery to be completed by July 13, 2018, and

directing that all motions for summary judgment be filed no later than August 13, 2018. (ECF No. 28.)

On March 26, 2018, Plaintiff moved to stay proceedings until the resolution of her then-pending motion for reconsideration of the February 6, 2018 Order. (ECF No. 30.) In addition, Plaintiff filed (1) a second Rule 54 Motion to Alter/Reverse Partial Judgment (ECF No. 35, April 8, 2018); (2) a request to modify the scheduling order and for extension of time to amend the complaint (ECF No. 36, April 21, 2018); (3) an amended complaint (ECF No. 38, May 16, 2018; ECF No. 39, May 24, 2018); and (4) a motion for leave to file an amended complaint. (ECF No. 43, May 30, 2018.)

In the interim, Defendants issued a notice of deposition and subpoena *duces tecum* to Plaintiff to appear at the Philadelphia Office of the United States Attorney on July 9, 2018. (ECF No. 47, Ex. 1.) On June 24, 2018, Plaintiff moved to quash the notice of deposition and sought a protective order, claiming medical and financial hardship. (ECF No. 47.) Finding no basis to quash the deposition, I denied Plaintiff's motion to quash, acceded to Plaintiff's request that her deposition not be held at the U.S. Attorney's office, and ordered her to appear for the scheduled deposition in the United States Courthouse. (ECF No. 52.) Plaintiff then filed her first motion for recusal alleging that both my staff and the assigned Magistrate Judge were not impartial and were showing favoritism to Defendants' counsel. (ECF No. 56.)

On July 16, 2018, I denied Plaintiff's two motions for reconsideration, motion to stay discovery, second motion to alter judgment, motion to deem the February 7, 2018 Order a "final" order, multiple motions for leave to file an amended complaint, motion for appointment of counsel,

3

motion to sanction defense counsel, and first motion for recusal.[1]  (ECF No. 63.)  This Order prompted Plaintiff's second motion for recusal.  (ECF No. 65.)

Plaintiff failed to appear for her deposition on July 9, 2018, and emailed Defendants' counsel one hour prior to the deposition to state that she was not feeling well and was not up for the drive to Philadelphia.  (ECF No. 59, Ex. 2.)  Defendants then filed a motion to dismiss for lack of prosecution or, in the alternative, to compel discovery.  (ECF No. 59.)  On July 26, 2018, I ordered that Plaintiff "appear for a deposition, with the documents requested in Defendants' subpoena, to the United States Courthouse . . . in a courtroom to be determined, at a date and time to be agreed upon by the parties, but in no event later than thirty (30) days from the date of this Order."  (ECF No. 66 (emphasis omitted).)  I again tried to address Plaintiff's stated concerns about the deposition process and ordered that the only persons permitted to be present at the deposition were Plaintiff, any counsel she may retain, counsel for Defendants, and the court reporter.  Finally, I directed that if Plaintiff failed to either reasonably agree to a date and time for her deposition or appear for her deposition, her case may be dismissed for lack of prosecution.  (Id. ¶ 4.)  I also denied Plaintiff's second motion for recusal for the same reasons as set forth in the July 16, 2018 order.  (Id.)

Defense counsel emailed Plaintiff on July 26, 2018, to request dates for her deposition.  (ECF No. 69, Ex. 1.)  Plaintiff declined to provide these dates and responded that she was going to report defense counsel to the Pennsylvania Bar Association for "Attorney Misconduct."  (Id.)  Defense counsel followed up with Plaintiff the next day on the request for deposition dates, but received no response.  (ECF No. 64, Ex. 4.)

---

[1]  With respect to the recusal motion, I noted that Plaintiff's claims of bias and prejudice were based on her disagreement with many of the judicial rulings.  As it is well established that "disagreement with a judge's determinations and rulings cannot be equated with the showing required to so reflect on impartiality as to require recusal," (See ECF No. 63, pp. 5–6 n.9 (quoting In re TMI, 193 F.3d 613, 728 (3d Cir. 1999)), I denied Plaintiff's motion.

On August 6, 2018, Plaintiff filed a motion for protective order to "enjoin defendants and defense counsel from further harassment, revenge, retaliation, witness intimidation and inciting violence against Plaintiff." (ECF No. 67.) A week later, she filed her first motion to compel discovery. (ECF No. 68.)

On August 20, 2018, Defendants filed the current Motion to Dismiss alleging that Plaintiff refused to provide defense counsel available deposition dates. (ECF No. 69.) They asserted that because Plaintiff refused to comply with the Court's orders, there was good cause to dismiss her case with prejudice. (Id.) Two days later, Plaintiff filed a third motion for recusal. (ECF No. 70.) On September 3, 2018, she filed a response in opposition to the Motion to Dismiss (ECF No. 73), and, on September 12, 2018, she submitted another response and a "Motion for Sanctions Against Defense Counsel and Defendant for Abusing Judicial Policies." (ECF No. 75.)

To date, Plaintiff has refused to appear for her deposition.

## II. DISCUSSION

Federal Rule of Civil Procedure 41(b) provides:

> **(b) Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

The United States Court of Appeals for the Third Circuit has recognized that "[d]istrict court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice." Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). To determine the propriety of punitive dismissals,

the Third Circuit, in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984), has outlined a series of factors to be considered. The six Poulis factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868. Although "[d]ismissal is a harsh remedy and should be resorted to only in extreme cases," Marshall v. Sielaff, 492 F.2d 917, 918 (3d Cir. 1974), not all of the Poulis factors need be satisfied in order to dismiss a complaint." Mindek, 964 F.2d at 1372. Indeed, there is no "magic formula" or "mechanical calculation" with regard to the Poulis analysis. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (quoting Mindek, 964 F.2d at 1372). Instead, the decision should be made "in the context of the district court's extended contact with the litigant." Mindek, 964 F.2d at 1373. A court retains the inherent authority to dismiss a case in order to manage its own affairs and "achieve the orderly and expeditious disposition of cases." Marshall, 492 F.2d at 918 (quotations omitted).

With these principles in mind, I consider the Poulis factors in the context of this case.

**A.      Personal Responsibility**

"The first Poulis factor is an inquiry into the noncompliant party's personal responsibility." In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 319 F.R.D. 480, 485 (E.D. Pa. 2017). This factor focuses more closely on whether the party himself has failed to comply with the court's orders as opposed to whether counsel for the party is responsible. Briscoe, 538 F.3d at 258–59; Vittas v. Brooks Bros. Inc., Grp., No. 14-3617, 2017 WL 6316633, at *2 (D.N.J. Dec. 11, 2017). "[I]t is logical to hold a *pro se* plaintiff personally responsible for delays in his case because a pro

6

se plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney." Briscoe, 538 F3d at 258–59.

Here, it is undisputed that Plaintiff, has refused to attend her scheduled deposition, proposing either a deposition closer to Lancaster County, a phone deposition, or a deposition done entirely in writing. She filed her litigation in this forum, was well aware of the date and time of the first deposition, and was ordered to attend. She nevertheless failed to appear. Thereafter, she was ordered to confer with Defendants' counsel about a mutually agreeable date and time for a rescheduled deposition, but failed to do so. Plaintiff does not attempt to deny her personal responsibility. Accordingly, I find this Poulis factor to weigh in favor of dismissal.

### B. Prejudice to the Adverse Party

Under the second Poulis factor, "[e]vidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Prejudice is not limited to "irremediable" or "irreparable" harm. Briscoe, 538 F.3d at 259; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222. A finding of prejudice to the opposing party "weighs heavily in favor of dismissal." Huertas v. City of Philadelphia, No. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005).

Here, Plaintiff's refusal to attend her deposition and comply with the subpoena *duces tecum* has precluded the advancement of this litigation. Plaintiff initiated this suit and is the source for most of the allegations. A plaintiff is required to prove his or her case, "as well as give the defendant an opportunity to prepare against it." Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988) (dismissing case under Poulis for plaintiff's refusal to give a deposition); see also Preston v. MR Scrap, No. 16-

7

2612, 2017 WL 4222935, at *2 (E.D. Pa. Sept. 22, 2017) ("Plaintiff's failure to submit to deposition prevents Defendants from developing and implementing their trial strategy"); Smith v. Altega Credit Co., No. 02-8221, 2004 WL 2399773, at *5 (E.D. Pa. Sept. 22, 2004) (A "'prolonged delay in litigating a case creates a presumption of prejudice' because it harms a defendant's ability 'to present a full and fair defense on the merits of plaintiff's claim.'") (quoting Beckman v. Integrated Sys. Int'l, Inc., No. 88-4534, 2002 WL 22832098 (E.D. Pa. Sept. 30, 2002)). This factor therefore weighs in favor of dismissal as well.[2]

## C. History of Dilatoriness

The third Poulis factor looks at Plaintiff's history of dilatoriness. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Chiarulli v. Taylor, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) (quoting Adams, 29 F.3d at 874). "[C]onduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe, 538 F.3d at 261 (quotations omitted). Rather, this factor is more concerned with "consistent delay." Id.

Plaintiff has certainly exhibited dilatoriness, having first resisted personally attending a Rule 16 conference and thereafter repeatedly refusing to appear for a deposition in Philadelphia. It is true that Plaintiff otherwise has no history of delay and has met other deadlines in responding to motions. But her refusal to be deposed has substantially delayed the discovery process in this case. Accordingly, I find that this factor favors dismissal.

---

[2] In addition, Defendants have suffered other prejudice aside from their inability to develop a defense. Due to Plaintiff's last minute cancellation of the first deposition, Defendants incurred court reporter fees. (ECF No. 59, Ex. 3.) Further, as they have been unable to re-schedule the deposition, they were unable to file a motion for summary judgment prior to the August 14, 2018 deadline.

## D. Willfulness or Bad Faith

The fourth Poulis factor inquires whether the actions of a party suggest willfulness or bad faith. A court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." Adams, 29 F.3d at 875 (internal quotation marks and citation omitted). Generally, "[w]illfulness involves intentional or self-serving behavior." Id. "If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.'" Briscoe, 538 F.3d at 262; see also Poulis, 747 F.2d at 868–69 (finding that plaintiff's counsel's behavior was not contumacious because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his poor health and his wife's pregnancy issues). A "persistent failure to honor discovery orders may be viewed as a willful effort to evade discovery." Huertas, 2005 WL 226149, at *4 (quotations omitted).

Plaintiff initially moved to quash Defendants' subpoena alleging that travelling to and from Philadelphia was "all-day and very taxing event." (ECF No. 47, p. 1.) She claimed that it would subject her to undue medical, physical, mental, and financial burden, especially given her health problems and the ongoing heat. (Id. at 2.) She also maintained that two weeks was insufficient notice for her to gather the required documents and prepare for the trip from her home in Chester County to Philadelphia. (Id.) Finally, Plaintiff asserted that "a face-to-face oral deposition (especially on Defense Counsel's own turf) would signal an open invitation for Defense Counsel to engage in a free-for-all feeding frenzy—predatory mobbing behavior—against a medically vulnerable and un-represented plaintiff (in a forum where there would NOT be a neutral arbiter of facts or referee)." (ECF No. 47, p.5.) She offered to appear for an oral deposition, conducted by telephone, for a period of no more than sixty minutes. (Id. at 5.)

Finding no basis to quash the subpoena, I denied the motion on July 26, 2018, and directed Plaintiff to appear for a deposition at a date and time to be agreed upon by the parties, but "in no

event later than thirty (30) days from the date of this Order." (ECF No. 66.) Taking into account Plaintiff's fear of appearing in defense counsel's offices alone, I further instructed that the deposition take place in the courthouse and that the only persons permitted to be present were Plaintiff, any counsel she may retain, counsel for Defendants and the court reporter. (Id.) In that same Order, I warned that "[s]hould Plaintiff fail to (a) reasonably agree to a date and time for her deposition and/or (b) appear for her deposition, her case may be dismissed for lack of prosecution." (Id.) That same day, Plaintiff emailed my Chambers to state that she would not come to Philadelphia for a deposition unless someone arranged a U.S. Marshal escort for her. (ECF No. 69, Ex. 3.)

Eleven days later, on August 6, 2018, Plaintiff filed a "Motion for Protective Order to Enjoin Defendants and Defense Counsel from Further Harassment, Revenge, Retaliation, Witness Intimidation, and Inciting Violence Against Plaintiff." (ECF No. 67.) In a twenty-four page brief, Plaintiff accused defense counsel of exploiting the court system, engaging in witness intimidation, and inciting violence against her. (Id.) A week later, Plaintiff filed a motion to compel discovery that lodged additional allegations against Court staff and defense counsel, and demanded discovery on a wide range of topics beyond her remaining claim of invasion of privacy. (ECF No. 68.)

On August 20, 2018, having yet to secure a date from Plaintiff for her deposition availability, Defendants filed a motion to dismiss for lack of prosecution. In that motion, defense counsel explained that they had emailed and sent a certified letter to Plaintiff, informing her about the Court's Order and requesting dates of availability for deposition. (ECF No. 69.) As of the date of the motion, Plaintiff has not replied to their request.

Plaintiff responded to Defendants' motion with a third motion for recusal seeking to preclude Court staff and defense counsel's further involvement with the case. (ECF. No. 70.) Over the course of forty pages, Plaintiff lodged serious, but unsubstantiated, accusations against various

individuals.[3] She then responded to the current motion to dismiss, arguing that she faced life-threatening harm and extreme danger if she appeared for the deposition, and that Defendants had numerous alternatives by which to obtain the information they needed. (ECF No. 73.) Via that same response, Plaintiff again accused defense counsel of harassment and lodged ethical accusations against Court staff. (Id.) In a September 12, 2018 filing, Plaintiff accused Defendants and defense counsel of "put[ting] out a hit on Plaintiff" and requested sanctions against defense counsel. (ECF No. 75, p. 15.)

Given this history, I find that Plaintiff's repeated disregard of Court orders and refusal to appear for a deposition was done in bad faith. Federal rules require "plaintiff or its agents to appear for the taking of depositions in the district in which the suit is brought," South Seas Catamaran, Inc. v. Motor Vessel Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988). Plaintiff complained about threats to her safety, yet nothing in defense counsel's actions evidence that she ever faced any risk. Despite the fact that I arranged for the deposition to be held in the Courthouse to accommodate her concerns, Plaintiff continued to offer a multitude of ever-changing and unsupported reasons for why she could not appear and why Defendants did not need her deposition or discovery. She also lodged multiple serious accusations against defense counsel, who, by all accounts, did nothing other than proceed through the normal course of adversarial litigation. As Plaintiff's actions were "intentional" and "self-serving," I find that this Poulis factor favors dismissal.

---

[3]    Specifically, she alleged, for example, that (a) the Court was abusing its authority by manufacturing false law and cooperating with defense counsel; (b) defense counsel was purposely placing her in harm's way; (c) that defense counsel has been using an intimidation campaign and that the Court has condoned these actions; (d) that Court staff was interfering with the fair adjudication of the case; (e) that the Court had predetermined the disposition of this case; (f) that Defendants and defense counsel were knowingly subjecting Plaintiff to health and safety risks; (g) that Court staff were cooperating with defense counsel to coerce her into dropping her complaint or "entrapping" her; and (h) that Defendants, through defense counsel and Court staff, were targeting Plaintiff as a member of a vulnerable population. (See ECF No. 70.)

### E. The Effectiveness of Sanctions Other Than Dismissal

The fifth Poulis factor considers whether alternative sanctions would be more effective than dismissal. Generally, a district court "should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits[,]" Titus v. Mercedes Benz of North Am., 695 F.2d 746, 749 (3d Cir. 1982), and therefore "must consider the availability of sanctions alternative to dismissal." Briscoe, 538 F.3d at 262. The Third Circuit has recognized that alternative sanctions "include a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, . . . dismissal of the suit unless new counsel is secured[,] . . . the preclusion of claims or defenses, or the imposition of fees and costs upon plaintiff's counsel under 28 U.S.C. § 1927." Titus, 695 F.2d at 749 n.6.

A factually-analogous case from the Third Circuit offers some guidance on the application of this Poulis factor. In Hicks v. Feeney, 850 F.2d 152 (3d Cir. 1988), the plaintiff was involuntarily committed to a state hospital and subsequently brought a § 1983 action against the director of the hospital for alleged deprivation of procedural due process. Id. at 153–54. In connection with his suit, the plaintiff was deposed for forty minutes, after which he refused to answer any more questions and failed to return after the break. Id. at 154. He subsequently failed to appear for other scheduled depositions. Id. The plaintiff's counsel then emailed the court indicating that the plaintiff "did not want to discuss what he believed to be extremely private matters concerning what happened to him while he was confined at the Delaware State Hospital." Id. The court ordered the plaintiff to appear at a deposition and pay for the costs of the previous depositions. It further warned that additional sanctions, including outright dismissal, would be imposed if he failed to appear. Id. at 154–55. The plaintiff did not appear again. Id. at 155. When defendant moved for sanctions, plaintiff agreed to waive his "actual" injury claim, but still press for presumed and punitive

12

damages. Id. The plaintiff also suggested that even a $1.00 award of nominal damages would be an alternative sanction to an outright dismissal. Id. Nonetheless, the district court dismissed the case.

On appeal, the Third Circuit reviewed the Poulis factors and declined to find any abuse of discretion, noting that the plaintiff's conduct was willful, that review of the record revealed no conduct by defense counsel to intimidate or harass the plaintiff, and the defendant suffered substantial prejudice from the plaintiff's failure to appear at the depositions. Id. at 156. It remarked, "[a]lthough we sympathize with Hicks's reluctance to recount the facts surrounding his incarceration at DSH, he is the plaintiff and as such must prove his case, as well as give the defendant an opportunity to prepare against it." Id. Turning to the possibility of alternative sanctions, the Third Circuit agreed with the district court that a lesser sanction would not be appropriate. Id. at 157. It noted that the district court properly considered alternatives, such as precluding the plaintiff from testifying about his mental status, prohibiting evidence rebutting the hospital's medical records, and finding that the plaintiff suffered no actual injuries, thereby precluding compensatory damages. Id. It found no error in the district court's ultimate conclusion that the case simply could not proceed on presumed and punitive damages without giving the defendant an opportunity to depose the plaintiff. Id.[4]

Considering the Poulis factors, and specifically whether alternative sanctions were an option, the court found that no other sanctions would be effective. Id. at *4. It found that monetary

---

[4] See also Preston v. EMR Scrap, No. 16-2612, 2017 WL 4222935 (E.D. Pa. Sept. 22, 2017) (dismissing case for plaintiff's repeated failure to appear for his deposition, reasoning that "[a] party's failure to attend his own deposition on multiple occasions without informing counsel and in direct violation of a Court Order is obviously unacceptable conduct . . . ."); Huertas v. City of Philadelphia, No. 02-7955, 2005 WL 226149 (E.D. Pa. Jan. 26, 2005) (dismissing case for plaintiff's failure to attend deposition, especially after court accommodated plaintiff's fear of heights and ordered that deposition take place no higher than the second floor of a building).

sanctions were unhelpful because the plaintiff was proceeding *in forma pauperis* and that lesser sanctions dismissing portions of the plaintiff's case, prohibiting the plaintiff from introducing certain matters into evidence, or staying the case would not be helpful and would likely harm defendants by forcing them to expend more time and money on the case. Id. at *4.

Similarly here, I find that no other possible sanctions would be effective. In light of Plaintiff's *pro se* status, fines are not a viable option. Plaintiff has already received warnings in the form of orders directing her to comply with deposition notices. Finally, Plaintiff has only one claim remaining, meaning that the preclusion of her one claim would be tantamount to a dismissal. Plaintiff has not only failed to appear for her deposition in Philadelphia, but has affirmatively indicated both her refusal to appear and her unwillingness to abide by the Court's orders. Due consideration of the possible alternatives leads me to conclude that dismissal with prejudice is an appropriate sanction in this case.

### G. Meritoriousness of the Claim or Defense

The final factor under Poulis looks at the meritoriousness of the plaintiff's claim or the defendant's defense. The standard of meritoriousness when reviewing a dismissal is not stringent:

> [W]e do not purport to use summary judgment standards. A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.

Poulis, 747 F.2d at 869–870.

Although almost all of Plaintiff's claims in her Complaint were dismissed, her invasion of privacy claim survived a motion to dismiss. This claim, if substantiated by discovery, could potentially warrant a recovery by Plaintiff. I would be remiss, however, to disregard the relatively scant nature of Plaintiff's allegations in support of this claim. Plaintiff alleges that a Coatesville VA employee provided unauthorized access and disclosure of Plaintiff's private health information

to Plaintiff's brother, who is also a Coatesville VA employee. (Compl. at p. 15.) To substantiate this claim, Plaintiff has offered few supporting facts and Defendants have yet had the opportunity to obtain discovery to test the merits of this claim. Therefore, I deem this Poulis factor neutral.

### H. Conclusion as to *Poulis* Factors

Upon careful review of the Poulis factors, I find that Plaintiff's repeated refusal to appear for a deposition in defiance of Court orders constitutes adequate grounds for dismissal of this case. Plaintiff initiated this action and has propounded numerous requests for discovery, while giving no discovery in return. Moreover, she has lodged numerous, unfounded accusations against defense counsel, Court staff, and others. In turn, Defendants have been completely stymied in their ability to investigate and defend this case. As Poulis factors one, two, three, four, and five weigh heavily in favor of dismissal, and factor six is neutral, Plaintiff's Complaint will be dismissed with prejudice.

## III. CONCLUSION

In light of the foregoing, I will grant Defendants' Motion to Dismiss for Lack of Prosecution. An appropriate Order follows.